UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
1:22-cv-00084-RJC

| | |
|---|---|
| TIFFANY LIVENGOOD, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the Parties' Cross Motions for Summary Judgment (Doc. Nos. 9, 11). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is proper and affirms the decision. Accordingly, Defendant's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**.

**I.  BACKGROUND**

Plaintiff Tiffany Livengood seeks judicial review of the Commissioner of Social Security's denial of her social security claims. Livengood filed applications for supplemental security income and disability insurance benefits on March 12, 2020, (Tr.[1] at 141), based on an alleged disability onset date of February 6, 2020. (*Id.* at 262).

On September 2, 2020, the Social Security Administration denied Livengood's initial claim and denied her claim again upon reconsideration in February 2021. (*Id.* at 163, 176).

---

[1] Citations to "Tr." throughout the order refer to the administrative record located at Doc. No. 7.

1

Livengood then agreed to a telephone hearing with Administrative Law Judge ("ALJ") Charles Howard on July 21, 2021. *(Id.* at 101). After that hearing, the ALJ denied Livengood's claim for benefits on August 4, 2021, (*id.* at 64), and the Appeals Council later denied Livengood's request for review. (*Id.* at 1).

In denying Livengood's social security claim, the ALJ conducted a five-step sequential evaluation. (*Id.* at 67-91). At step one, the ALJ found that Livengood had not engaged in substantial gainful activity since the alleged onset date. (*Id*. at 70). At step two, the ALJ found that Livengood suffered from osteoarthritis; anemia; posttraumatic stress disorder; obstructive sleep apnea, chronic obstructive pulmonary disease; depression; anxiety; history of alcohol use disorder; and obesity, all of which are severe impairments. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id*. at 70-71). Before moving to step four, the ALJ found that Livengood had the following residual functional capacity ("RFC"):

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: with no more than occasional climbing, kneeling, crouching, or crawling. Also, she cannot have concentrated exposure to pulmonary irritants, hazards, noise, or humidity extremes. Mentally, the claimant can maintain concentration for only simple tasks.

(*Id*. at 72). At step four, the ALJ found that Livengood was unable to perform any past relevant work and found at step five that Livengood could perform jobs that exist in significant numbers in the national economy. (*Id*. at 90-91).

After exhausting her administrative remedies, Livengood brought this action for review of the Commissioner's decision denying her applications for disability benefits and supplemental security income. (Doc. No. 1). Both Livengood and the Commissioner moved for summary judgment, (Doc. Nos. 9, 11), and the issues are now ripe for review in this Court.

2

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> More than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("[I]t is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that a reviewing court is not to reweigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. This is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Livengood urges this Court to remand because, according to her, the ALJ failed to perform a proper function by function analysis regarding her need to rest during the day and her need to occasionally elevate her legs. (Doc. No. 10). Livengood's argument is without merit; the ALJ based his decisions on substantial evidence and properly explained those decisions by assessing Livengood's credibility, relying on objective medical evidence, and comparing Livengood's claimed limitations with her activities of daily living.

### A. The ALJ Properly Explained His Decision on Livengood's Need to Rest

"The determination of eligibility for social security benefits involves a five-step inquiry." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). "The five step inquiry asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of [one of certain listed] impairments ...; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work." *Id.* at 653 n.1; 20 C.F.R. § 404.1520. Before the fourth step, the ALJ determines the claimant's RFC, which is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). "The ALJ must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "In doing so, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion," including a "discussion of which evidence the ALJ found credible and why, and specific application of

pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 188-89 (internal quotation marks and citations omitted).

Livengood first takes issue with the ALJ's omission of rest breaks in the RFC. Though the ALJ acknowledged that Livengood "says she gets really tired and takes naps," (Tr. at 73), he never explained, Livengood argues, "why he did not include breaks or time off task generally for Ms. Livengood to rest before assessing the RFC." (Doc. No. 10 at 4). Thus, according to Livengood, because the ALJ "provided no rationale" for his omission of rest breaks, the ALJ failed to engage in a function-by-function review of all of Livengood's physical impairments.

Unless a certain impairment is "irrelevant or uncontested," an ALJ must at least explain the rationale behind his decision not to make allowances for a certain impairment in the RFC. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). Here, Livengood bases her request for remand on two sentences from the hearing: first, Livengood noted in the hearing that she occasionally wears her BiPAP oxygen machine during the day because "I get really tired, and I take naps," (Tr. at 109), and second, she reported that she rests for "most of the day," meaning she would complete part of a task then would "come and sit down … and then I'll go check on [the task] and come and sit down." (*Id.* at 116).

Contrary to Livengood's assertions, the ALJ did engage in a function-by-function analysis and make allowances for Livengood's inability to be active for long periods of time in the RFC. To begin, Livengood's passing comments that she "get[s] really tired" and "take[s] naps" do not constitute "contradictory evidence" that Livengood can perform sedentary work, because she points to no evidence that her tiredness limits sedentary work. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c); *see also Mascio*, 780 F.3d at 636 (remanding "where an ALJ fail[ed] to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record.");

5

*Green v. Berryhill*, No. 1:15-CV-00273-RJC, 2017 WL 1206014, at *7 (W.D.N.C. Mar. 30, 2017) (remanding where the ALJ "wholly disregard[ed] … evidence … from multiple sources"). Nor could she – multiple sources, including objective medical sources, assessed Livengood and indicated she is actually capable of even more rigorous work than that the ALJ included in Livengood's RFC. (Tr. at 123-31, 132-40, 143-51, 152-60 (all listing Livengood's recommended work exertion level as "Light," rather than sedentary)).

In addition, the ALJ considered Livengood's discussion on resting for "most of the day" when he noted that the State agency medical consultants "underestimated the overall severity of the claimant's combined impairments by finding she could do work at a range of light exertion" and instead found that Livengood could "do no more than a range of sedentary work." (Tr. at 89 (citing Livengood's "significant combination of postural and environmental limitations")). Such a finding is consistent with Livengood's discussion on rest; she spoke of resting in contrast to lifting heavy objects and repeatedly indicated that she rested by sitting down, not by taking naps. (*Id.* at 117 ("I'll start something then I'll come and sit down. And then I'll go check on it and come and sit down … If I bend or anything like that, it makes my oxygen go down … once I sit down my heart rate starts going down and my oxygen starts climbing back up.")); *see* SSR 83-14 ("The major difference between sedentary and light work is that most light jobs … require a person to be standing or walking most of the workday.").

The ALJ also explained that his determination is in line with the vocational expert's hypothetical recommendation on "sedentary exertion." (Tr. at 91). Livengood maintains, however, that the ALJ's hypothetical to the VE "fail[ed] to fit the facts," and therefore that the ALJ erred in relying on the VE's answer. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979) (holding that vocational expert testimony did not constitute "substantial evidence" where the ALJ's

6

hypothetical "fails to fit the facts"). Livengood again skews the record in her favor by conflating rest with napping. The ALJ asked the VE to consider "sedentary exertion with no more than occasional climbing, kneeling, crouching, or crawling," and to assume the hypothetical individual "can maintain concentration for only simple tasks," and the VE explained there would be work in the national economy for that hypothetical individual. The ALJ's hypothetical did "fit the facts" because Livengood consistently reported that she rested "for most of the day" by sitting down, not by napping, and the ALJ accounted for such rest by directing the VE to consider sedentary work.

Finally, the ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. *Hays*, 907 F.2d at 1456. Consequently, the ALJ is accorded deference with respect to determinations of a claimant's credibility. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Id.* In assessing Livengood's credibility – and specifically comparing her statements with her activities of daily living – the ALJ found that though Livengood's impairments "could reasonably be expected to cause the alleged symptoms," her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," such as her activities of "taking a short walk every day" and taking care of herself and her children. (Tr. at 75-76); *see Williams v. Berryhill*, No. 3:17-CV-00467-RJC, 2018 WL 4705557, at *5 (W.D.N.C. Sept. 29, 2018) (Conrad, J.) (finding this same language about a claimant's credibility appropriate under *Mascio* where the ALJ chronicled Plaintiff's history of treatment and considered its implications).

Thus, in light of the foregoing, the ALJ based his decision on substantial evidence, provided a satisfactory "narrative discussion" explaining his decision, and properly explained

7

Livengood's capacity to perform relevant functions of sedentary work.

### B. The ALJ Properly Explained His Decision on Livengood's Need to Elevate her Legs

In crafting an RFC without explicit allowance for occasional elevation of the legs, the ALJ first noted that Livengood's statements "concerning the intensity, persistence, and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 75). He then noted seven instances where Livengood's medical providers found she suffered from no edema (the swelling that requires Livengood to elevate her legs), (Tr. at 79, 80, 81, 82 (two instances), 83, 85), and three instances where providers found she did suffer from peripheral edema. (Tr. at 80, 81, 83).

He went on to reiterate that the "severe functional limits described by the claimant are at least partially inconsistent with her treatment records and the objective evidence, which … repeatedly document stable gait and coordination, grossly intact cranial nerves II-XII, normal motor strength, and regular heart rate and rhythm. Likewise, more recent clinical examination findings posted in the MER since starting treatment reflect overall improved results." (Tr. at 88). As noted above, the ALJ is responsible for making credibility determinations, *Hays*, 907 F.2d at 1456, and his determinations of credibility are afforded deference. *Shively*, 739 F.2d at 989.

The ALJ's assessment of Livengood's credibility and his comparison of her testimony to her activities of daily living and objective medical testimony is therefore a proper explanation of his decision; he explained that, though Livengood claimed certain severe limitations – such as her need to elevate her legs – he found her less limited in light of clinical examinations, the testimony of state doctors who found she was capable of even more rigorous work, and her timeline of relative improvement, which he chronicled extensively. (Tr. at 88); *see Williams*, 2018 WL

8

4705557, at *5. Therefore, the ALJ based his decision on substantial evidence, provided a satisfactory "narrative discussion" explaining his decision, and properly explained Livengood's capacity to perform relevant functions of sedentary work.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **DENIED**;

2. The Commissioner's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**; and

3. The Commissioner's decision to deny Livengood Social Security benefits is **AFFIRMED.**

Signed: September 15, 2023

Robert J. Conrad, Jr.
United States District Judge